Leonard KIAN, Plaintiff,

v.

MIRRO ALUMINUM COMPANY, Defendant.

Civ. A. No. 79–70322.

United States District Court, E. D. Michigan, S. D.

Dec. 5, 1980.

---

1. The attorney–client privilege has been waived as to the document itself. *See* discussion *supra.*

Price, Heneveld, Huizenga & Cooper by Randall G. Litton, Michael A. Mohr, Grand Rapids, Mich., for plaintiff.

Hume, Clement, Brinks, Willian & Olds, Ltd. by Roy E. Hofer, Robert L. Harmon, Gary M. Ropski, Chicago, Ill., Harry R. Dumont, West Bloomfield, Mich., for defendant.

## OPINION

GILMORE, District Judge.

Is there ever a time that a denial of a jury trial is justified in a case that normally would be tried by a jury because of the complexity of the matter? That is the issue in this case. The answer is clearly no.

This action alleges breach by the defendant of an agreement under which defendant was granted an exclusive license under plaintiff's then pending United States patent application for a pizza–making device known as a "Porta–Pizzaria". Plaintiff executed the agreement on April 3, 1974, granting an exclusive license to defendant. Defendant, under the agreement, was to manufacture the device and pay a royalty to plaintiff.

During the term of the agreement, defendant marketed a second device known as a "Watta Pizzaria." This device is substantially similar to the "Porta–Pizzaria" except it contains its own heating element.

Plaintiff filed suit in 1979 claiming that the defendant breached the royalty agreement in that the "Watta Pizzaria" comes within the patent and the contract of April 3, 1974. The case was originally filed in the Wayne County Circuit Court, and the complaint contained a demand for jury trial. The suit was subsequently removed to this court by defendant, and the demand for jury trial came with it. There is no question that the jury demand was a timely demand filed in accordance with the provisions of Rule 38 of the Federal Rules of Civil Procedure.

The complaint alleges that defendant has breached the agreement by his failure 1) to pay the plaintiff the royalties therein specified on account of its sales of the "Watta Pizzaria," and 2) to mark its Watta Pizzaria with the patent number as required by the agreement. The prayers for relief are strictly legal in nature, there being no request for any equitable relief.

Defendant has filed this motion seeking to have plaintiff's jury demand stricken. Defendant claims that it is a suit involving complex legal and factual questions, numerous items of evidence, and an extended trial period. Defendant argues that the number of issues and factors in the case justifies striking the jury demand. It claims: 1) the jury will have to understand the license agreement in order to determine if it has been breached; 2) the jury will have to understand the prior art to determine if plaintiff has a valid patent, and that there are 57 patents which may be involved in the determination of the prior art; 3) the jury will have to understand the history of plaintiff's patent to determine whether the doctrine of file wrapper estoppel prevents the plaintiff from utilizing the legal doctrine known as "equivalence," and 4) the jury will have to understand the two devices, the Watta Pizzaria and the Porta Pizzaria to determine if there is any infringement of plaintiff's patent.

Defendant argues that because of these complexities of the case denial of jury trial is appropriate.

■ We start with the fundamental proposition that in suits at common law the right to jury trial is preserved in any controversy exceeding $20. The Seventh Amendment to the Constitution provides:

"In suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved,

and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of common law."

Justice Story made a classic explanation of what was meant by "common law" in *Parsons v. Bedford*, 3 Pet. 433, 28 U.S. 433, 446–447, 7 L.Ed. 732 (1830) when he said:

"... By common law they meant what the constitution denominated as the third article 'law;' not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those, where equitable rights alone were recognized, and equitable remedies were administered; or where, as in admiralty, a mixture of public law, and of maritime law and equity was often found in the same suit ... In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction whatever may be the peculiar form which they may assume to settle legal rights."

Moore points out in his work on Federal Practice:

"The Amendment is preservative in character and neither enlarges nor restricts the right of jury trial as it was known to the English common law at the time the Amendment was adopted. This principle is concerned with matters of substance and not of form, and does not preclude the application of the Amendment to newly created rights of a legal nature, which would under common law principles be enforced in a suit at common law....

.     .     .     .     .

"The creation of a new remedy, such as the declaratory judgment, does not encroach upon the constitutional right for jury trial, provided there is a right to such mode of trial for issues that are basically legal ..." 5 Moore's *Federal Practice*, § 38.11[4], pages 38–74, 38–75.

Professor Wright, states:

"... Despite the critics, there is still a general professional view that maintenance of the jury as a fact finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to jury trial should be scrutinized with the utmost care. The Supreme Court has been zealous to safeguard, perhaps even to enlarge, the function of the jury." Wright, *Law of Federal Courts*, 3rd Edition, West Publishing Co., (1976), § 92, page 448.

And the Supreme Court of the United States pointed out in *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1934) at 485, 486, 55 S.Ct. at 300, 301:

"The right of trial by jury is of ancient origin, characterized by Blackstone as 'the glory of the English law' and 'the most transcendent privilege which any subject can enjoy,' (BK. 3, page 379); and, as Justice Story said (2 Story on the Constitution, § 1779), '... the Constitution would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms.' With, perhaps, some exceptions, trial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at law as well as in criminal cases. Maintenance of the jury as a fact–finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care ..."

The right to jury trial is determined by the nature of the issue to be tried. Where the issue is basically a law issue, then the case will be heard by a jury. By the same token, there is no right to a jury trial when the issue presented would have been tried in England in the Courts of Equity, or in some manner without a jury.

Here there is no question but what this case is a case of legal nature. It is, in its simplest terms, a suit claiming breach of agreement by the defendant to pay plain-

tiff the royalties specified, and for damages for failure to mark the "Watta Pizzaria" with the patent number required by the agreement. The prayers for relief are strictly legal in nature, money damages being requested.

Defendant, nonetheless, claims that the Court has discretion and should deny the right to jury trial. The genesis of this claim comes from a surprising footnote of the Supreme Court in *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1969). In footnote 10, at page 538, in footnote 10, 90 S.Ct. at page 738, the Court says:

"As our cases indicate, the 'legal' nature of an issue is determined by considering, first, the pre—merger custom with reference to such questions; second, the remedy sought; and third, *the practical abilities and limitations of juries . . .*" (emphasis added)

In commenting on this footnote, Wright says, supra, page 454:

" . . . The third of the factors mentioned in that footnote was surprising since it seems to invite a balancing approach to the right to jury trial, while the accepted learning has been that that balance was already struck by the Seventh Amendment. But 'the footnote is so cursory, conclusory, and devoid of cited authority or reasoned analysis that it is difficult to believe it could have been intended to reject such established historical practice or Supreme Court precedent.' There have been occasional references in subsequent lower court cases to the tripartite test suggested by the *Ross* footnote, but these hardly seem more than makeweight references to support results that would have been reached had the footnote never been written. Certainly there is no indication in the cases that the courts are adopting a balancing test, and weighing the practical abilities and limitations of jurors, to displace the traditional tests for when an issue is triable to a jury."

A few courts have seized upon the third test and have held that in complex litigation the court may deny the Seventh Amendment Right to a jury trial. Better reasoned opinions have squarely rejected the notion that the Seventh Amendment Right to jury trial is somehow jeopardized merely because the trial may be lengthy and the issues difficult.

As authority for its position that this Court has the balancing power and should deny a jury trial because of its complexity, defendant cites, as authority in this Circuit, *Hyde Properties v. McCoy*, 507 F.2d 301 (6 Cir., 1974). He also cites as authority in this District, *Securities and Exchange Commission v. Associated Minerals Inc.*, 75 F.R.D. 724 (D.C., 1977). Neither case is on point. In each case, the issue was whether the case was legal or equitable in nature, and the entire determination of the court was made upon this basis. At no time did the court, consider the complexity issue, nor did either court suggest that a case that was properly triable to a jury could be tried to the court without a jury merely because of its complexity.

Two Courts of Appeal have considered the question of complexity as a factor in determining whether there is a right to jury trial or not. In *In re U. S. Financial Securities Litigation*, 609 F.2d 411 (CA9 1979), cert. den., *Gant v. Union Bank*, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980), the Court held, in a well—reasoned opinion, that complexity of litigation is not a factor in determining whether there should be a right to jury trial. But in *In re Japanese Electronic Products*, 631 F.2d 1069 (CA3 1980), the Third Circuit held that complexity of the litigation is a factor.

In *In re Japanese Products*, supra, the Court held that due process may require that the case be tried to the judge. It stated that the Constitutional right to due process must be balanced against the Seventh Amendment Right to trial by jury. It is interesting to note that the court found that the footnote in *Ross*, standing alone, would not be sufficient authority to support the denial of a litigant's Seventh Amendment Right to jury trial. But it did hold, at page 1088 of 631 F.2d, that:

"The complexity of a suit must be so great that it renders the suit beyond the ability of a jury to decide by rational means with a reason–able understanding of the evidence and applicable legal rules. Moreover, the district court should not deny a jury trial if by severance of multiple claims thoughtful use of the procedures suggested in the Manual for Complex Litigation or other methods the court can enhance the jury's capabilities or can reduce the complexity of a suit sufficiently to bring it within the ability of a jury to decide. Due process should allow denials of jury trials only in exceptional cases."

And on page 1079 of 631 F.2d, the court said:

" . . . A suit is too complex for a jury when circumstances render the jury unable to decide in a proper manner. The law presumes that a jury will find facts and reach a verdict by rational means. It does not contemplate scientific precision but does contemplate a resolution of each issue on the basis of a fair and reasonable assessment of the evidence and a fair and reasonable application of the relevant legal rules. . . . A suit might be excessively complex as a result of any set of circumstances which singly or in combination render a jury unable to decide in the foregoing rational manner. Examples of such circumstances are an exceptionally long trial period and conceptually difficult factual issues."

This Court rejects the rationale of the Third Circuit in *In re Japanese Electronic Products,* and elects to follow the Ninth Circuit's decision in *In re U. S. Financial Securities Litigations,* supra. In a thoughtful and thorough opinion, the court rejected the concept that there are cases too complex for juries. In its conclusion, the Court said, (pages 431–432):

"Not only do we refuse to read a complexity exception into the Seventh Amendment, but we also express grave reservations about whether a meaningful test could be developed were we to find such an exception. Where would the courts draw the line between those cases which are, and those which are not, too complex for a jury? The court below found that the complexity of the present case was created primarily by the accounting and financial nature of the issues and evidence. The appellees generally assume that only antitrust and securities cases could qualify for the complexity exception. We acknowledge the complicated nature of the evidence and issues associated with the accounting and financial questions involved in antitrust and securities cases. Yet, almost all tax cases also involve the same type of evidence and issues; does this then mean that there should not be a right to jury trial in this broad class of cases as well? . . .

"We hold that there is no complexity exception to the Seventh Amendment right to jury trial in civil cases. . . . Moreover, we decline the invitation to read the *Ross* footnote as establishing a new interpretation of the Seventh Amendment. And we do not believe any case is so overwhelmingly complex that it is beyond the abilities of a jury . . . "

Those who claim that juries cannot understand complex civil cases improperly demean the intelligence of the citizens of this nation, and do not understand the jury system. As pointed out in *In re Financial Securities Litigation,* supra, jurors bring collective wisdom, intelligence, and dedication to their task rarely equaled in other areas of public service. Juries have a unique way of collectively arriving at a proper and just result.

Those who would seek an "elitest" approach to the use of the jury trial would undermine one of the most fundamental of our rights. There is no complexity exception to a jury trial that would authorize the denial of a jury when it is otherwise available under the Seventh Amendment. Therefore this Court will deny the motion to strike the demand for jury trial, and the case will be tried as a jury case.

■ The second portion of defendant's motion seeks the appointment of an impar-

tial expert under Federal Rules of Evidence 706 if the Court denies the right to jury trial. Its theory in asking for the appointment of an impartial legal expert is that the case is so complicated that an impartial expert should be appointed to inform the jury of what the case is all about.

Although the Court retains broad discretion in the appointment of impartial experts, this is not a case which predicates a fair disposition upon the testimony of such a witness. The matters raised herein are not amenable only to expertise, but are within the comprehension of laypersons. The presence of a court–sponsored witness, who would most certainly create a strong, if not overwhelming, impression of "impartiality" and "objectivity," could potentially transform a trial by jury into a trial by witness. Under the circumstances of the present case, where the issues are within the grasp of the jury, appointment of an expert should and can be avoided.