*1005
 
 SAFPELS, District Judge.
 

 This action was initially brought by Oklahoma Natural Gas [hereinafter ONG] in the United States Bankruptcy Court for the Western District of Oklahoma. ONG sought damages plus injunctive relief to prevent Mahan & Rowsey, Inc. [hereinafter MRI] from producing gas from the Manes # 1 and # 3 wells. A request for preliminary injunction by ONG was denied on September 30, 1982. The matter was subsequently tried to the Bankruptcy Court on November 21, 1983 through November 25, 1983, and the Bankruptcy Court found in favor of ONG. Written proposed findings of fact and conclusions of law were transmitted to the district court for approval. MRI filed a motion on December 9, 1983, for the district court to disapprove the proposed findings and conclusions and to conduct an evidentiary hearing. The district court entered its memorandum opinion on March 20, 1985 in favor of ONG, 48 B.R. 767.
 

 On appeal, MRI claims the district court erred by failing to consider the nature of subsurface geology when reaching its conclusion that MRI’s explanation of the gas/water contact at Observation Well # 4 was contrived; by shifting the burden of proof by accepting ONG’s tilted water table theory without finding a supporting cause; by concluding a tilted water table existed without evidence supporting a causal factor and by declining to appoint an expert engineering witness to aid the court in interpreting engineering testimony.
 

 The standards governing appellate review are well-established. The findings of a trial court on appeal will not be reversed unless they are clearly erroneous.
 
 Burgert v. Tietjens,
 
 499 F.2d 1 (10th Cir.1974). The appellate court is not to determine whether the trial court reached the correct decision, but rather is to determine whether it reached a permissible one in light of the evidence.
 
 E.E.O.C. v. Gaddis,
 
 733 F.2d 1373 (10th Cir.1984). A reviewing court may not reverse the findings of the trial court simply because it would have decided the case differently.
 
 Anderson v. City of Bessemer City,
 
 — U.S. -, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Likewise, an appellate court is not to decide factual issues de novo.
 
 Id.
 
 Where two permissible views of evidence exist, the factfinder’s choice between them cannot be clearly erroneous.
 
 United States v. Yellow Cab Co.,
 
 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949). These rules apply even when the trial court’s findings do not rest on credibility determinations, but are based on physical or documentary evidence or inferences from other facts.
 
 Anderson,
 
 105 S.Ct. 1504.
 

 We have carefully reviewed the record and the findings of the district court and conclude that the judgment of the district court should be affirmed. The district court carefully weighed the evidence along with expert testimony and arrived at a logical and permissible conclusion. There is nothing in the record to lead us to find that the ruling by the trial court is clearly erroneous. When viewing the decision of the trial court in its entirety, it is apparent that MRI's arguments lack merit.
 

 The facts as summarized by the district court are essentially as follows. In 1950, ONG obtained permission to use the depleted Dutcher sandstone formation underlying the Depew gas field in Creek County, Oklahoma. ONG used this area to store extraneous natural gas that it had produced elsewhere. In the early 1960’s, the De-pew storage began to reflect the loss of substantial quantities of the stored natural gas. Eight (8) observation wells were drilled between 1964 and 1968 and it was determined that gas was escaping to the northeast of the storage area. ONG drilled a series of water injection wells to block the loss and no further gas loss was recorded until May, 1982.
 

 In 1981, MRI began drilling wells in an area three miles south of the active storage area. Two of the wells, the Manes # 1 and the Manes # 3 produced natural gas while a third well, the Manes # 2, resulted in a dry hole. The geographic location of the Manes wells in relation to the location of
 
 *1006
 
 the storage area and observation wells is as follows.
 

 Observation Well No. 1 is at the far northern extremity of the storage area. Directly to the south is the M. Lewis Well, an injection and withdrawal well inside the storage area. To the southwest of the Lewis, also within the storage area, is a second injection and withdrawal well, the Big Pond. To the south and slightly to the east of the Lewis, approximately four thousand feet (4,000') from the active storage area, is Observation Well No. 2. Due south of the Lewis, approximately eight thousand feet (8,000') from the active storage area, is Observation Well No. 4. Due south of Observation Well No. 4 is Observation Well No. 6, some fifteen thousand feet (15,000') from the active storage area. The Manes wells are to the west of Observation Well No. 6, almost due south of the active storage area.
 

 The Dutcher sandstone formation is found below these wells. As it extends south from Observation Well No. 1, it occurs deeper with respect to sea level altitude and at the Manes wells it is some one hundred twenty feet (120') lower than the main storage area.
 

 ONG contended that the gas in its storage reservoir migrated through the Dutch-er formation to the Manes wells, therefore MRI was producing its natural gas which was injected for storage purposes. MRI denied that this occurred and contended that the gas in the storage area and the gas at the Manes wells and Observation Well No. 6 are separated by a solid column of water causing the wells to exhibit a pressure relationship, but not allowing a communication of gas.
 

 The district court required ONG to prove three factual contentions: (1) that the Manes wells are completed in the Dutcher sandstone, the formation in which the De-pew storage reservoir is found and in which Observation Well No. 6 is completed; (2) that the Manes wells are in gas communication with Observation Well No. 6; and, (3) that the system of wells comprised of the Manes wells and Observation Well No. 6 is in gas communication with the Depew storage area.
 

 The district court found the Manes wells to be completed in the Dutcher sandstone formation, the same formation in which Observation Well No. 6 and the Depew storage reservoir are found, thereby rejecting testimony of MRI’s geology expert on the basis of flawed charts and conflicting testimony with that of MRI’s other experts. The district court then found the Manes wells to be in gas communication with Observation Well No. 6 because of a striking pressure relationship between the wells, the close proximity of the wells, and the similar, if not identical, gas produced from the wells.
 

 The district court finally concluded that the Manes wells and Observation Well No. 6 are in gas communication with the Depew storage area and it is this finding which MRI so vigorously challenges. The district court noted MRI’s opposition to ONG’s theory of gas communication to be well-based; however, found it to depict the natural conditions of the Dutcher sandstone at equilibrium. Thereafter, the district court found that area not to be in equilibrium as the result of over 30 years of injection and withdrawal of natural gas and injection of water. The district court agreed with ONG that a tilted water table which slopes downward to the south allows for an unfilled portion of the formation through which natural gas can migrate from the storage area to the Manes wells. The district court relied on ONG’s “strong evidentiary basis” to support this theory. Also, the existence of gas in the observation wells between the storage area and the Manes wells negate the assertion that the Dutcher is completely water saturated between these points. The district court rejected MRI’s assertion that each of the observation wells might be drilled into a gas trap to be contrived and less believable than ONG’s theory. The district court found it would strain credibility to conclude that every one of the observation wells was drilled into a gas trap. Also, the district court relied on expert testimony that the gas produced by the
 
 *1007
 
 Manes wells is not native natural gas because of the presence of helium in the gas, the lack of certain organic compounds normally found in native natural gas, the dissimilar composition of the gas in the Manes wells in relationship to native natural gas produced by other wells in the area, and the bottom hole pressures encountered in the Manes wells exhibit characteristics unexpected from a native natural gas reservoir.
 

 First, MRI contends that the district court did not consider the nature of subsurface geology when concluding that its explanation was contrived. MRI asserts that the Dutcher sandstone is characterized by depressions, arches, cracks, holes and valleys creating barriers trapping hydrocarbons indefinitely until extracted by drilling. MRI argues that its theory was not any more contrived than nature itself and the district court erred by making its finding without evidence. This argument lacks merit. The district court carefully weighed and balanced the conflicting theories along with the evidence submitted and determined the theory of ONG to be more plausible. This cannot give rise to clear error.
 

 Next, MRI contends that by accepting ONG’s theory of a tilted water table without finding a supporting cause, the district court impermissibly shifted the burden of proof to MRI. The district court’s memorandum order makes clear that it was aware at all times that ONG had the burden of proof in this matter and specifically refers to ONG’s burden of proof when discussing its theory of gas communication. MRI makes much of the district court’s use of the word “rare” when discussing MRI’s theory of stratigraphic traps. The findings of a trial court should be considered in their entirety. See
 
 Weise v. United States,
 
 724 F.2d 587 (7th Cir.1984). When viewing the district court’s opinion in its entirety, MRI’s argument on this point cannot stand. The district court carefully weighed both theories and found the theory of ONG to be more believable and to be supported by the evidence.
 

 MRI next argues that the district court erred by finding a tilted water table existed without determining a rational causal factor proven by the evidence. The district court relied on the evidence presented and concluded that a tilted water table occurred in the region although the court did not conclusively determine whether it was caused by gravity override or some other factor. The district court had substantial evidence on which to base its conclusion and was not obligated to find the cause of the existing condition. The trial court does not have to make findings as to every detail.
 
 Nulf v. Int’l. Paper Co.,
 
 656 F.2d 553 (10th Cir.1981) “Findings of fact are sufficient if they indicate the factual basis for the court’s general conclusion as to ultimate facts and are broad enough to cover all material issues.”
 
 Id.
 
 at 561.
 

 Finally, MRI argues that they are being deprived of substantive due process of law because of the district court’s failure to appoint its own independent expert witness. MRI asserts that without the aid of an independent witness, the district court lacked the expertise to weigh the scientific principles involved. The district court has discretion to appoint an independent expert witness. See Rule 706(a), Federal Rules of Evidence,
 
 Kian v. Mirro Aluminum Co.,
 
 88 F.R.D. 351 (E.D.Mich.1980). The fact that the parties’ experts have a divergence of opinion does not require the district court to appoint experts to aid in resolving such conflicts.
 
 Georgia-Pacific Corp. v. United States,
 
 640 F.2d 328, 226 Ct.Cl. 95, (1980). We conclude that the district court was in no way obligated to appoint an expert in this case and its failure to do so cannot give rise to error.
 

 The judgment of the district court is hereby AFFIRMED.