**William N. LEDFORD, Plaintiff–
Appellant,**

v.

**Michael J. SULLIVAN, Gordon A.
Abrahamson, Patrick Knowles,
et al., Defendants–Appellees.**

No. 95–1959.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1996.

Decided Jan. 27, 1997.

Jerold S. Solovy, William A. VonHoene, Jr., David Jimenez–Ekman (argued), Jenner & Block, Chicago, IL, for Plaintiff–Appellant.

James E. Doyle, Robert Repasky (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before CUMMINGS, BAUER and EVANS, Circuit Judges.

BAUER, Circuit Judge.

William Ledford ("Ledford") filed suit under 42 U.S.C. § 1983 against seven Wisconsin state prison officials, alleging that his Eighth and Fourteenth Amendment rights were violated when prison personnel confiscated his prescription medication. While confined at the Green Bay Correctional Institution ("GBCI"), Ledford was prescribed Zoloft, an anti-depressant drug. On January 4, 1994, Ledford was transferred to Dodge Correctional Institution ("DCI"), where he currently is serving the remainder of an eight-year sentence. Upon Ledford's arrival at DCI, his medication was confiscated pursuant to a state prison policy which provides: "[D]rugs brought in by newly admitted inmates from the community are not to be administered to the inmate until the following functions are performed: (1) Policy or protocol is consulted as to the appropriateness of maintaining inmate on the medication OR (2) A physician's order has been written or received, and the label instructions are confirmed or changed."

Defendant–Appellee Nurse Elizabeth Feldmann, supervisor of the intake process, testified that in Ledford's case, the staff followed DCI's routine for intake of a new prisoner with a prescription for psychotropic drugs. First, the intake nurse contacts the prison where the inmate was last incarcerated to determine if the prescription is current. The nurse also checks whether the prescribed medication is on DCI's list of medications that should not be discontinued pending psychiatric review.[1] Finally, the nurse relays the inmate's file to Clinical Services so that a staff psychiatrist can examine the inmate to determine whether the inmate should resume taking the previously-prescribed medication.

Defendant–Appellee Dr. J.R. Musunuru examined Ledford nine days after Feldmann delivered Ledford's file to Clinical Services.

---

1. Nurse Feldmann stated that Zoloft was not on DCI's restricted list.

Although he apparently had some misgivings as to whether Ledford's continued use of Zoloft was necessary, Dr. Musunuru renewed Ledford's prescription. Two days later, Ledford received a new prescription for Zoloft.[2] Ledford alleged that in the eleven days between his intake and his receipt of a new prescription, he experienced nausea, vomiting, dizziness, a "crawling of the skin" sensation, unspecified emotional and mental regression, and depression.

In his *pro se* complaint, Ledford alleged that when prison officials deprived him of his medication, they violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process of law. The district court granted Ledford's motion to proceed *pro se* and *in forma pauperis*. The district court dismissed *sua sponte* Ledford's due process claim pursuant to Federal Rule of Civil Procedure 12(b)(6), reasoning that the State provided Ledford adequate post-deprivation remedies. The court subsequently denied Ledford's two motions for appointment of an expert witness, finding that expert testimony was unnecessary and that no funds were available to compensate the expert.

Ledford proceeded to trial on his Eighth Amendment claim. At trial, Dr. J.R. Musunuru, a named defendant, and Dr. George Arndt, a privately-retained expert, testified for the prison officials that the discontinued use of Zoloft produced minimal, if any, side effects. A jury returned a verdict for the prison officials.

On appeal, Ledford contends that he had a protected property interest in his medication and that the trial judge should have appointed an expert witness to testify as to the prison officials' deliberate indifference to his serious medical needs. We find that Ledford had no property interest in his medication and that court appointment of an expert witness was unnecessary. Therefore, we affirm.

## Analysis

### A. *Fourteenth Amendment Claim*

 We review *de novo* a district court's 12(b)(6) dismissal. *Porter v. DiBlasio*, 93

F.3d 301, 305 (7th Cir.1996). *Sua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading. *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir.1992). We accept as true all facts alleged in the complaint and draw all reasonable inferences from them in the plaintiff's favor. *Id.* (citations omitted). We will affirm the dismissal of a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Title 42 U.S.C. § 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 2083, 129 L.Ed.2d 93 (1994). Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979). The initial step in any § 1983 analysis is to identify the specific constitutional right which was allegedly violated. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir.1994). Thus, we must decide whether Ledford pleaded any set of facts which could be proven consistent with his allegation that the prison officials violated his constitutional right to procedural due process.

Procedural due process claims require a two-step analysis. At the outset, we determine whether the plaintiff was deprived of a constitutionally-protected interest in life, liberty, or property. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982). If so, we then consider what process was due. *Id.* In his complaint, Ledford alleged that, pursuant to Wisconsin state policy, the named prison officials summarily deprived him of his medi-

---

**2.** On February 2, 1994, Ledford was transferred to the Racine Correctional Institution, where on March 29, 1994, a doctor changed Ledford's medication and took him off Zoloft.

cation and therefore violated his right to procedural due process. On appeal, Ledford maintains that whether he had a property interest in his medication is not in doubt because the district court assumed that he did.[3] Ledford argues that the only issue before us is what process was due. We disagree. Because we are reviewing the district court's dismissal of Ledford's Fourteenth Amendment claim *de novo*, we first address whether Ledford had a protected property interest in his medication.

■ Property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Shango v. Jurich,* 681 F.2d 1091, 1097 (7th Cir.1982) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). In the federal system, state law is the chief source from which property rights flow. *Id.* We consider the nature of the state law in question, for "[i]n order to give rise to a constitutionally-protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the State's discretion. . . ." *Cain v. Larson,* 879 F.2d 1424, 1426 (7th Cir.), cert. denied, 493 U.S. 992, 110 S.Ct. 540, 107 L.Ed.2d 537 (1989) (citations omitted). We also consider the context of the state law in question. Prison regulations, even those containing mandatory language, do not automatically engender property interests commanding procedural due process. *Colon v. Schneider,* 899 F.2d 660, 667 (7th Cir.1990).

■ Ledford maintains that two Wisconsin statutes provide him with a property interest in his medication. Ledford initially cites the *first* part of § 302.38(1) which states: "[I]f a person needs medical or hospital care, . . . the sheriff or other keeper of the jail shall provide appropriate care or treatment. . . ." Wis. Stat. § 302.38(1) (1991). Ledford also notes that in *Swatek v. County of Dane,* 192

Wis.2d 47, 531 N.W.2d 45, 47 (1995), the Wisconsin Supreme Court found that § 302.38(1) mandates that sheriffs or prison officials provide the appropriate medical care or treatment needed by those incarcerated within the jails of the state.

Ledford misstates the breadth of the statute. Section 302.38(1) provides, in relevant part:

> If a prisoner needs medical or hospital care or is intoxicated or incapacitated by alcohol the sheriff or other keeper of the jail *shall* provide appropriate care or treatment and *may* transfer the prisoner to a hospital or to an approved treatment facility. . . .

Wis.Stat. § 302.38(1) (emphasis added). Ledford also misstates the Wisconsin Supreme Court's construction of § 302.38(1). Reasoning that the word "shall" imposed a mandatory obligation on the State, the court in *Swatek* determined that "the *first part* of § 302.38(1) mandates that sheriffs provide the appropriate medical care or treatment needed by those incarcerated within the jails of the state." *Swatek,* 531 N.W.2d at 49–50 (emphasis added). However, the court also found that the word "may" in the second part of § 302.38(1) implied a discretionary element. *Id.* at 50. The court concluded that "the legislature recognized that although prisoners 'shall' be provided with appropriate medical care, sheriffs have the discretion or 'liberty' as to how to provide that care." *Id.*

Read in their respective entireties, § 302.38(1) and the holding in Swatek plainly belie Ledford's position. Section 302.38(1) grants Wisconsin prison officials discretion in providing inmates medical care and does not provide Ledford with a protected property interest in his medication. The statute lacks the substantive limitations on official discretion necessary to generate a property interest, and without such an interest, procedural due process cannot have been transgressed. See *Kentucky Dep't of Corrections v. Thomp-*

---

**3.** The district court dismissed Ledford's claim because it found that he was afforded adequate post-deprivation process. The district court did not address the first prong of the procedural due process test, whether Ledford had a protected property interest. Ledford interprets the district court's finding to mean that the court assumed that he had a protected property interest in his medication.

*son,* 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1910–11, 104 L.Ed.2d 506 (1989).

 Ledford next cites § 302.385 in support of his position. Section 302.385 states, in relevant part: "The standards for delivery of health services in any correctional institution ... shall be based on the essential standards of the American medical association standards for health services in prisons...." WIS. STAT. § 302.385 (1991). Ledford does not specify which, if any, of the American Medical Association ("AMA") standards bestows upon him a property interest in his medication.

 The AMA standards refer to a prisoner's medication, but they do not confer upon a prisoner a substantive right to his medication. See American Medical Association, Programs to Improve Medical Care and Health Services in Correctional Institutions, Standards for Health Services in Prisons (July 1979). For example, § A.118 states: "Written policy and defined procedures require that medical aspects are included for the routine transfer of inmates to their facilities.... The medical aspects may address ... [m]edication or other therapy required en route...." *Id.* at 10. Section C.136 states that "[w]ritten policy and defined procedures require continuity of care from admission to discharge from the facility...." *Id.* at 20. Section C.140 states that "[w]ritten policy and defined procedures require receiving screening to be performed by health trained or qualified health care personnel on all inmates, including transfers upon arrival at the facility...." *Id.* at 21. Such screening requires that qualified personnel inquire as to the medication prescribed to the inmate. *Id.* Finally, § D.163 requires that the prescribing provider perform a reevaluation of the prisoner prior to renewal of a prescription. *Id.* at 34. Section D.163 merely notes that the proper *management* of pharmaceuticals is essential, not that the pharmaceuticals themselves are essential. *Id.*

The AMA standards merely create guidelines. A state-created procedural right or policy is not itself a property interest within the confines of the Fourteenth Amendment. See *Shango,* 681 F.2d at 1101. When faced with claims similar to Ledford's, we have warned that "[c]onstitutionalizing every state procedural right would stand any due process analysis on its head. Instead of identifying the substantive interest at stake and then ascertaining what process is due, ... the process is viewed as a substantive end in itself." *Id.* Because the AMA standards only outline requisite procedures, they cannot confer upon Ledford a substantive right to his medication.

After careful review of both of the statutes offered by Ledford, we conclude that Ledford lacks a substantive property right in his medication. Thus, Ledford need not have been afforded procedural due process either before or after being deprived of his medication. We affirm the district court's dismissal of Ledford's Fourteenth Amendment claim.

### B. *Appointment of an Expert*

#### 1. *The Need for Court Appointment of an Expert*

 Ledford next contends that the district court abused its discretion by failing to appoint an expert witness pursuant to Federal Rule of Evidence 706. Rule 706 states that "[t]he court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed." Fed.R.Evid. 706(a). We review the denial of a defendant's motion for appointment of an expert witness for abuse of discretion. *United States v. Daniels,* 64 F.3d 311, 315 (7th Cir.1995) (citation omitted).

We have not directly addressed whether the appointment of an expert is essential to establish deliberate indifference.[4] Generally, if scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or decide a fact in

---

4. As Ledford correctly points out, in *Merritt v. Faulkner,* we deferred the issue of expert appointment because the record was not sufficiently developed to decide the issue at that time.

697 F.2d 761, 768 (7th Cir.1983), cert. denied, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983).

issue, a court will utilize expert witnesses. See Fed.R.Evid. 702. In the present case, the issue posed to the trier-of-fact was whether the state prison officials were "deliberately indifferent" to Ledford's "serious medical needs." Therefore, in order to establish a violation of the Eighth Amendment, Ledford had to prove that the state prison officials displayed deliberate indifference toward his illness and that his illness was serious. See *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

■ Given the particular factual issues in this case, determining deliberate indifference was not so complicated that an expert was required to establish Ledford's case. The test to decide whether a prison official acted with deliberate indifference is a subjective one. *Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir.), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). A prison official cannot be found to be deliberately indifferent unless the official knows of and disregards a substantial risk to an inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). "The official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* Generally, "[t]he infliction [of punishment] must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996). Because the test for deliberate indifference is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward Ledford's serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care. See *Franzen,* 780 F.2d at 652–53.

The jury in this case was instructed as to deliberate indifference as follows:

The first element of deliberate indifference is to be evaluated by a subjective analysis of the defendant or defendants and each defendant's state of mind. To act "deliberately" means to act intentionally; that is, knowingly and voluntarily and not because of mistake, inadvertence, or accident.

Deliberate indifference means that officials acted willfully and maliciously, or with reckless disregard of inmate's well-being with respect to plaintiff's medical care. A defendant acts recklessly when he disregards a substantial risk of danger that either is known to him or would be apparent to a reasonable person in his position. Recklessness is characterized by highly unreasonable conduct or a gross departure from ordinary care in a situation where a high degree of danger is present.

The court below gave this instruction after the jury heard defendants Nurse Feldmann and Dr. Musunuru state that they believed that discontinuing Zoloft produced no serious medical consequences. The jury was capable of evaluating the defendants' subjective belief in light of the court's deliberate indifference definition without the aid of an expert. In making its decision, the jury likely assessed the defendants' credibility as well.

The jury could likewise comprehend whether Ledford had serious medical needs without the aid of an expert. The trial court instructed:

The second element [of a deliberate indifference claim], serious illness, is to be examined objectively, focusing on the specific illness and the reasonable foreseeable consequences to the plaintiff of a deprivation or [sic] care, or delay in care, or inadequate care. A serious medical need can be defined as a life-threatening condition or as a condition carrying a risk of permanent impairment or extreme pain and suffering if left untreated.

During the time he was deprived of his medication, Ledford allegedly experienced nausea, dizziness, vomiting, a crawling sensation on his skin, unspecified emotional and mental regression, and depression. The symp-

toms which Ledford exhibited were not beyond a lay person's grasp. Most people are familiar with these experiences. The jury was aware of the court's instructions, the side effects displayed by Ledford, and the fact that Ledford was subsequently taken off Zoloft altogether. The issue of whether Ledford's illness was so severe that it was life-threatening or that it demanded a steady supply of Zoloft was not so complex that Ledford required court appointment of an expert.

Ledford claims that three other circuits have found that court appointment of an expert witness is necessary to prove deliberate indifference to a prisoner's serious medical needs. See *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir.1990); *Greason v. Kemp*, 891 F.2d 829, 835 (11th Cir.1990); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.), cert. denied, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). These cases are distinguishable from the one at hand.

Unlike Ledford's case where a jury returned a verdict of no deliberate indifference, the court in *Smith* found that the record was not sufficiently developed to determine the issue on the defendant's summary judgment motion, and therefore, the trial court should have deferred finding that there was no deliberate indifference. *Smith*, 919 F.2d at 93. The court reversed and remanded the case and instructed the trial court to study Smith's medical record. The court stated that if a dispute still existed as to Smith's diagnosis and treatment before and after incarceration, the court might *only then* appoint an independent psychiatrist or obtain a further opinion from Smith's previous physician concerning the nature of his prior treatment and the necessity of continuing any medication. *Id.*

Like *Smith*, *Greason* is distinguishable from the present case. In *Greason*, the plaintiff was a schizophrenic and suicidal prisoner who initially was housed at a mental health institution and subsequently transferred to a prison. Without reviewing the prisoner's file, a prison doctor examined him for a few minutes, concluded that he was "stable," and discontinued his medication. The prisoner subsequently committed suicide. The court in *Greason* observed that often "[w]hether an instance of *medical misdiagnosis* resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses." *Greason*, 891 F.2d at 835 (emphasis added). Medical misdiagnosis is distinguishable from a delay in examination. Moreover, the court in *Greason* did not order the appointment of an expert witness.

Finally, in *Jones*, although the plaintiffs won their underlying Eighth Amendment suit for cruel and unusual punishment, the court found that there was no deliberate indifference to the serious medical needs of any of the plaintiffs. The plaintiffs wanted reimbursement of fees paid for expert witnesses, not court appointment of expert witnesses. *Jones*, 636 F.2d at 1382. The court stated that without the ability to *recover* expert fees, plaintiffs, especially prison plaintiffs who are usually indigent, will be unable to bring civil rights cases. *Id.* The court spoke in very general terms and did not specifically address expert appointment regarding deliberate indifference. The Fifth Circuit in no way mandated that expert appointment was necessary for the proper presentation of a claim of deliberate indifference.

### 2. *Costs to Appoint an Expert*

Ledford contends that the trial court abused its discretion when it reasoned that no funds existed to pay an expert. Rule 706(b) states: "In other civil actions and proceedings, the compensation [of an expert] shall be paid by the parties in such proportion and at such times as the court directs, and thereafter charged in like manner as other costs." Fed.R.Evid. 706(b). A number of circuits have recognized that Rule 706(b) grants a district court the discretion to apportion all the costs of an expert to one side. See, e.g., *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir.1996) (remanding the case because the lower court failed to exercise its discretion to appoint and compensate an expert if the plaintiff was in fact indigent); *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir.), *vacated and remanded on other grounds*, 502 U.S. 903, 112 S.Ct. 291, 116 L.Ed.2d 236

(1991) (finding that the phrase "such proportion as the court directs," *in an appropriate case*, permits the district court to apportion all costs to one side); *Webster v. Sowders*, 846 F.2d 1032, 1038–39 (6th Cir.1988) (stating that "[a] District Court has authority to apportion costs under this rule [706(b) ], including excusing impecunious parties from their share"); *United States Marshals Serv. v. Means*, 741 F.2d 1053, 1059 (8th Cir.1984) (stating that discretionary power to advance fees of expert witnesses should be exercised *only under compelling circumstances).*

In this case, when the district court stated that no funds existed to pay for the appointment of an expert, it failed to recognize that it had the discretion to apportion all the costs to one side. We caution against reading Rule 706(b) in such a narrow fashion that the rule would allow for court-appointed experts only when *both* sides are able to pay their respective shares. Read in such a restrictive way, Rule 706(b) would hinder a district court from appointing an expert witness whenever one of the parties is indigent, even when that expert's testimony would substantially aid the court. See *McKinney*, 924 F.2d at 1511. However, in this case, the trial court also stated, and we agree, that appointing an expert was unnecessary. The district court therefore exercised the discretion conferred upon it by Rule 706(b).

In light of the discretionary authority vested in the court under Rule 706 and the facts raised by Ledford's deliberate indifference claim, we find no abuse of discretion in the trial court's decision not to appoint an expert.

**Conclusion**

We AFFIRM the judgment of the trial court as to Ledford's Fourteenth Amendment claim, but on grounds different from those stated by the trial court. We also AFFIRM the trial court's decision not to appoint an expert witness.