Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued November 16, 2006       Decided February 9, 2007

No. 05-7010

HUMBERTO ANTONIO GAVIRIA,
APPELLANT

v.

DONALD REYNOLDS, DDS, ATTENDING SURGEON, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02350)

---

*Eric Berger*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs were *Ian Heath Gershengorn* and *David W. DeBruin*, appointed by the court.

*Humberto A. Gaviria*, pro se, filed briefs.

*James C. McKay, Jr.*, Senior Assistant Attorney General, Office of Attorney General for the District of Columbia, argued

the cause for appellees. With him on the brief were *Robert J. Spagnoletti*, Attorney General, and *Todd S. Kim*, Solicitor General. *Edward E. Schwab*, Deputy Attorney General, entered an appearance.

Before: GINSBURG, *Chief Judge*, and ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: After Humberto A. Gaviria underwent five surgeries to repair jaw problems resulting from a 1989 altercation with the police, he filed a medical malpractice action against nine oral surgeons ("Surgeons") who participated in the surgeries. Acting *pro se* after the withdrawal of his court-appointed attorney, Gaviria was unable to substantiate his claims with expert testimony as required by District of Columbia law, and the district court granted summary judgment for the Surgeons. On appeal, Gaviria contends through court-appointed amicus curiae that the district court abused its discretion by refusing to appoint replacement trial counsel after Gaviria's appointed counsel withdrew and that the court further erred by refusing to appoint an expert witness pursuant to FED. R. EVID. 706.

The district court took adequate steps to assist Gaviria in the development of his claims. Gaviria benefitted from appointed trial counsel—who explored Gaviria's claims with the help of an expert before he withdrew—and appointed mediation counsel, who worked to negotiate a settlement while helping Gaviria, as did the district court itself, to collect discovery materials from third parties. By the time the district court granted summary judgment for the Surgeons, it knew that neither a recent scan of Gaviria's head nor anything Gaviria had presented contributed toward his burden to show that the Surgeons caused or

exacerbated the injuries to his jaw. Because Gaviria's claims were given due consideration and because neither his *pro se* brief nor Amicus's demonstrates error by the district court, we affirm.

## I.

Gaviria was injured in 1989, when he was struck on the right side of his face and sustained a fractured jaw during an arrest in Boston, Massachusetts. In May 1994, while in custody at the D.C. Jail, he began to complain about "severe headaches" and "severe problems on [his] right jaw." Gaviria Decl. at 1. He was taken to the now-defunct D.C. General Hospital where he was diagnosed with a deranged right temporomandibular joint ("TMJ"). A group of four surgeons performed a lengthy operation to alleviate Gaviria's pain on May 12, 1994. This operation failed to resolve Gaviria's condition, and four more surgeries were performed: another in 1994 and three more in 1998. When Gaviria's condition still did not improve, he filed this lawsuit on September 29, 2000, against D.C. General Hospital[1] and the Surgeons. After over a year passed, the district court appointed counsel with Gaviria's consent, observing:

> Defendants have been unable to resolve the matter on threshold issues of jurisdiction. Given the nature and complexity of the claims and the likelihood that [the case] will need to be resolved on the merits, the Court finds that appointment of counsel would be in the interests of justice.

Order of Oct. 9, 2001 (citing D.D.C. Civ. R. 83.11(a)(4)(B)

---

[1] The hospital was dismissed as a party by the district court on jurisdictional grounds and is not a party to this appeal.

(amended 2001)). Patrick A. Malone, Esq., of the law firm Stein, Mitchell & Mezines entered an appearance as appointed counsel. Malone requested Gaviria's medical records from the Surgeons and forwarded the available records and films to Dr. Jeffrey Gittleman, a dentist specializing in oral surgery including TMJ problems, for his preliminary review. After Dr. Gittleman reported to Malone that he "did not see anything unusual" in the medical records of Gaviria's first two surgeries and that "problems like [Gaviria's] are frequently never cured," Malone reported these findings in a letter to Gaviria and withdrew from the case. The district court then granted Gaviria's request to proceed *pro se.*

In subsequent filings, Gaviria reconsidered his decision to represent himself and sought additional court-appointed counsel. In September 2002, the district court appointed counsel for the limited purpose of mediation. One of the two mediation lawyers spoke Spanish, Gaviria's native tongue. In March 2003, Gaviria requested that his mediation counsel be converted to permanent counsel, but the district court refused because mediation counsel had not consented. At the same time, the district court declined to appoint another *pro bono* attorney pending the outcome of mediation and discovery. After mediation failed and counsel withdrew in September 2003, Gaviria renewed his request for appointed counsel. In December 2003, the district court "conclude[d] that a reappointment [was] not warranted" because the court itself had assisted Gaviria in obtaining the records of his surgeries from the government, mediation counsel also had assisted with discovery, there was no indication that there were remaining discovery issues, and a lawyer with whom Gaviria had communicated had not consented to an appointment. Order of Dec. 12, 2003.

Meanwhile, Gaviria made several requests for the district court to appoint an independent expert witness. On each

occasion, the district court refused. Despite Gaviria's professed difficulty with the English language and lack of knowledge of the law, the district court concluded that Gaviria's situation and case "d[id] not present the type of compelling circumstances to justify the exercise of any such discretionary authority." Order of July 10, 2002. In further explanation, the district court remarked that "the first appointed counsel utilized the services of an expert, who apparently could not render an opinion in support of plaintiff's case," and that "medical records of recent tests have been produced by the Bureau of Prisons which do not appear to support his claims." Order of Dec. 12, 2003. The recent tests included a noncontrast enhanced CT scan of Gaviria's head at the University of Texas Medical Branch Hospital in Galveston from which Dr. Harish S. Jhaveri reported that "[b]oth temporomandibular joints are normal." Gaviria's own attempts to find an expert proved unfruitful. At a March 2004 status conference, he told the district court that he had consulted "too many" potential experts and "they say, I'm sorry, they feel [for] my case, but they say it's impossible." Discovery closed on May 30, 2004.

On August 9, 2004, the Surgeons filed a motion for summary judgment. In granting the motion, the district court acknowledged that expert testimony is "an essential element" of a prima facie case of medical malpractice under District of Columbia law and stated:

> Plaintiff has not proffered a sworn statement or any other evidence from the doctors at the Fort Worth facility to support his claim pertaining to causation. Nor does he claim that they can provide expert testimony on the applicable standard of care. Plaintiff's bare representations are insufficient to create a triable issue.

*Gaviria v. D.C. Gen. Hosp.*, Civ. No. 00-2350, mem. op. at 4 (D.D.C. Sept. 16, 2004). Gaviria appeals.

## II.

No civil litigant is "guaranteed counsel," *Willis v. FBI*, 274 F.3d 531, 532 (D.C. Cir. 2001), but district courts are authorized by statute to "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1). This court concluded in *Willis* that Local Civil Rule 83.11(a)(4)(B) was the appropriate metric for evaluating appointment of counsel and that the district court's decision would be vacated only for abuse of discretion. 274 F.3d at 532. The Local Rule underwent a minor amendment and renumbering in 2001 but is substantively the same as relevant to this appeal and remains, therefore, an appropriate framework for our review.[2]

---

[2] D.D.C. CIV. R. 83.11(b)(3), as amended in 2001, now provides:

> When leave has been granted pursuant to 28 U.S.C. § 1915 for a *pro se* litigant to proceed *in forma pauperis*, the judge to whom the case is assigned may, on application by the *pro se* party or otherwise, appoint an attorney from the [Civil Pro Bono] Panel to represent such party. The appointment should be made taking into account:
>
>> (i) the nature and complexity of the action;
>>
>> (ii) the potential merit of the *pro se* party's claims;
>>
>> (iii) the demonstrated inability of the *pro se* party to retain counsel by other means; and
>>
>> (iv) the degree to which the interests of justice will be served by appointment of counsel, including the

Amicus contends that the district court erred in refusing to reappoint counsel for Gaviria by providing "scanty reasoning" that was "speculative and irrelevant." Brief of Amicus Curiae at 38. In particular, Amicus maintains that the district court should have set forth the four factors of Local Civil Rule 83.11(b)(3) and explained how they were implicated in Gaviria's case. However, in light of the record of the proceedings, the district court's articulation sufficed to demonstrate that it did not abuse its discretion.

After acknowledging that Rule 83.11 was controlling, the district court concluded that a reappointment was unwarranted because Gaviria had competently prosecuted his case with the assistance of the district court. The district court noted that Gaviria had contacted private counsel but that the attorney had not entered an appearance. Further, the district court noted that neither the response by the expert consulted by Gaviria's first appointed counsel (Malone) nor the recent CT scan results supported the merits of Gaviria's claims. Concluding that it had worked to ensure Gaviria a "full and fair hearing on his complaint," the district court denied Gaviria's request for reappointment of counsel. Order of Dec. 12, 2003.

Despite its brevity, the district court's discussion shows that it considered each of the four factors of Rule 83.11(b)(3) and does not constitute an abuse of discretion. To the contrary, considering the factors independently, it is clear that the balance of factors in the local rule weighs against Gaviria. While the "nature and complexity of the action" initially favored Gaviria, leading the district court to appoint counsel, this factor does not weigh so much in his favor that any malpractice claim requires a second appointment of counsel after initial counsel withdraws.

benefit the Court may derive from the assistance of the appointed counsel.

The district court concluded that Gaviria had done an adequate job prosecuting his case and that the difficulties had been resolved with the assistance of the district court and prior counsel. The potential merits of Gaviria's claims favor the Surgeons because there is no evidence that Gaviria's claims have merit—in the sense that he would be able to meet his burden to show causation—and a growing body of circumstantial evidence to suggest otherwise. Gaviria's ability to retain counsel by other means is probably a wash—he had consulted other counsel who did not take his case, leaving this court unable to distinguish between whether his case was meritless or whether the attorney was uninterested in a *pro bono* assignment. On the final factor, the "interests of justice," the district court noted that it "expended significant time and resources in assuring that [Gaviria] receives a full and fair hearing on his complaint" and that "[Gaviria] proceeded to prosecute his case in a competent manner." Order of Dec. 12, 2003.

While the district court has a "plain duty . . . to appoint counsel to assist" the plaintiff "[w]hen necessary to insure that an indigent prisoner's allegations receive fair consideration," *Hudson v. Hardy*, 412 F.2d 1091, 1095 (D.C. Cir. 1968), Gaviria's claims have been fleshed out, with the assistance of initially appointed counsel and mediation counsel; his claims just happen to be unsupported and perhaps unsupportable. In the end, Gaviria's claims fail because he has not been able to produce *anything* beyond his own allegations to establish that he has jaw problems, let alone that they were caused by the Surgeons. Absent at least a preliminary showing of a meritorious claim, there is no basis, in light of the district court's reasonable conclusion that Gaviria had ably handled his case with the assistance provided, to conclude that the district court abused its discretion in denying Gaviria's request for new counsel after the district court had appointed both initial counsel

and mediation counsel and assisted him in obtaining discovery. *See Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997).

## III.

Federal Rule of Evidence 706(a) provides:

> The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection.

Our standard for reviewing the district court's refusal to appoint an expert under Rule 706 is a matter of first impression. Because the rule speaks in permissive terms and requires an individualized case-specific determination, other circuits review such denials for abuse of discretion. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1349 n.14 (11th Cir. 2003); *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999); *Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997). We join these circuits.

Rule 706 provides no instruction as to when an expert should be appointed except insofar as the district court "may" do so. As for when the district court *should* appoint an expert, Professors Wright and Gold suggest that "[w]hile Rule 706 provides no standard for determining when to appoint an expert, the policy [of promoting accurate factfinding] underlying the provision supplies some guidance." CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, 29 FEDERAL PRACTICE AND PROCEDURE § 6304, at 465 (1997). Courts have hesitated to find any affirmative obligation to exercise the Rule 706 power. *See Quiet Tech.*, 326 F.3d at 1348-49; *Steele v. Shah*, 87 F.3d 1266,

1271 (11th Cir. 1996); *Okla. Natural Gas Co. v. Mahan & Rowsey, Inc.*, 786 F.2d 1004, 1007 (10th Cir. 1986); *see also* WRIGHT & GOLD, *supra*, § 6304, at 469. While none of these cases has involved expert testimony that forms part of a plaintiff's prima facie case, other courts to consider Rule 706 have required only that the district court actually exercise its discretion and expressly articulate a reasoned explanation for its determination. *See Quiet Tech.*, 326 F.3d at 1348-49; *Steele*, 87 F.3d at 1270-71.

The district court acknowledged that expert testimony consistent with Gaviria's position was imperative to his case, but it cannot follow that a court must therefore appoint an expert under Rule 706 whenever there are allegations of medical malpractice. Here, by relying upon an appointed attorney specializing in medical malpractice (Malone) who had a professional obligation (and a financial incentive) to unearth evidence and by allowing Gaviria repeated opportunities to come forward with substantiating evidence, the district court was assured of receiving preliminary information about the likely merits of Gaviria's malpractice claims before having to decide whether a formal appointment of an expert would be necessary. As it turned out, the district court granted summary judgment only after Gaviria acknowledged that he had been in contact with many experts who had been unable or unwilling to help, after appointed trial counsel consulted an expert who found no likely fault with Gaviria's first two surgeries, and after recent medical tests by the Bureau of Prisons showed no continuing TMJ problems.

It is difficult to understand what more Amicus would require of the district court at this preliminary stage of the proceedings. The district court understood that Gaviria's claim entailed possibly difficult medical questions and gave Gaviria repeated opportunities to show that his claim had substance. In

so doing, the district court was left, after full discovery, without even a statement from Gaviria's current doctors that something had gone wrong in the prior surgeries and with an unexplained five-year period between the initial injury to Gaviria's jaw and his first surgery. Although Amicus protests any reliance by the district court on its own interpretation of the medical evidence, we find no fault in the district court's reliance at this preliminary stage of the proceedings on the uncontroverted physician's opinions that in plain terms belie the premise of Gaviria's complaint. *Cf. Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

While it is true that Gaviria cannot prevail under District of Columbia law without an expert witness, *see Gubbins v. Hurson*, 885 A.2d 269, 280 n.5 (D.C. 2005), it is fair to say that Gaviria's claims fail not because of the district court's refusal to appoint an expert witness but because of his broader failure to adduce any evidence that the claims have merit. The district court and mediation counsel guided Gaviria through discovery and, through the efforts of appointed counsel, an expert examined the medical records from Gaviria's first two surgeries and found that there was likely nothing wrong, a conclusion supported by the subsequent medical tests forwarded to the district court by the Bureau of Prisons. Under the circumstances, the district court did not abuse its discretion in refusing to appoint an expert witness.

**IV.**

Gaviria's *pro se* brief likewise presents no basis for reversing the grant of summary judgment to the Surgeons. He contends that the district court erroneously resolved factual matters on summary judgment that are relevant to his previously-unmentioned constitutional claims. The thrust of his argument is that "[t]he facts alleged by the plaintiff are evidence

that the Surgeons were acting maliciously and sadistically to cause harm." Appellant's Br. at 8. However, this assertion is not enough for Gaviria to survive summary judgment on his medical malpractice claims. *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-56 (1986). To the extent that Gaviria invokes the Constitution, he failed to include such a claim in his complaint and he has not made allegations of subjective indifference necessary to pursue this line of argument. *See, e.g.*, *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 & n.38 (D.C. Cir. 1984).

Accordingly, because Gaviria and Amicus fail to demonstrate that the district court erred, much less abused its discretion, in denying his requests for reappointment of counsel and for an expert witness, we affirm the grant of summary judgment.