NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 8, 2014[*]
Decided April 10, 2014

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-1522

| | |
|---|---|
| GERMAINE A. ELCOCK, | Appeal from the United States District |
| *Plaintiff–Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 10-1095 |
| | |
| KELLY DAVIDSON, et al., | James E. Shadid, |
| *Defendants–Appellees.* | *Chief Judge.* |

**O R D E R**

Germaine Elcock, an inmate at Dwight Correctional Center in Illinois, appeals the grant of summary judgment against her in this suit asserting unconstitutional conditions of confinement and deliberate indifference to a vomiting episode she had at the prison and her subsequent diagnosis of Hepatitis A. *See* 42 U.S.C. § 1983. We affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeal thus is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

In early 2010 Elcock sued two nurses and three prison officials after she experienced a bout of vomiting and severe stomach pain—the result, she believes, of drinking contaminated water at the prison the previous night. According to her complaint, Elcock drank tap water from her cell in May 2009—after a brief period during which the water taps had been turned off because of pump failure, and then restored. A grievance counselor later clarified that the taps had been shut off because of pump failure, and not contaminated water. The day after drinking the water, Elcock says, she felt nauseated and vomited several times. Nurse Jessica Chicke visited her cell early that morning and offered her Tylenol. Elcock says she repeatedly told one prison officer, Theresa Meredith, of her vomiting attacks and asked to go to the infirmary; Meredith allegedly responded by alerting her supervisors, Lieutenant Kelly Davidson and Sergeant James Boland. According to Elcock, Davidson was also in the wing that morning but did not check on her. That afternoon Nurse Jerri Angeloff went to Elcock's cell and told Elcock that there was nothing she could do to treat her, but recommended she take small sips of bottled water. Elcock says she felt better as the afternoon passed, but was weak for the next several days. The following day, she added, she filed an emergency grievance requesting a doctor's exam, but her request was ignored by Warden Carolyn Trancoso.

The same day that she filed her complaint, Elcock filed the first of seven motions seeking the recruitment of counsel to assist her, but the court denied the motion because Elcock had not demonstrated that she tried to find counsel on her own. Three months later she requested the assistance of a lawyer and again the court denied her request, this time because her claims were not so complex that she could not represent herself. In September Elcock made the same request, and the court summarily denied it.

In early 2011 Trancoso, Meredith, Davidson, and Boland moved for summary judgment on the ground that Elcock had not exhausted her administrative remedies. The court denied the motion, finding that Elcock in May 2009 had filed a grievance in which she complained that Davidson and Meredith ignored her pleas for medical care and that Trancoso denied emergency review. The court dismissed Boland from the suit, however, because Elcock in her grievances had not named him or otherwise shown that he knew about her requests for medical care.

Elcock requested a lawyer again in August, and the court summarily denied the motion. She renewed her request in September, seeking assistance at an evidentiary hearing to reconsider whether she had exhausted her administrative remedies in accordance with *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The court also denied this request, explaining that Elcock was capable of arguing that she had exhausted her administrative remedies. The next month Elcock yet again asked for a lawyer, and the

judge reiterated that she was competent to represent herself at that stage of the proceedings.

Discovery ensued and Elcock learned, when she obtained her medical records, that a Hepatitis A antibody test performed in September 2011 was positive. In early 2012 she asked the court to appoint an expert to "testify as to how [her] exposure to water contaminated with human waste carries a significant risk of contracting viral diseases such as Hepatitis A." The court denied the motion, explaining that Elcock did not show that specialized or scientific knowledge would aid the fact-finder in an assessment of deliberate indifference.

Soon thereafter Elcock moved to amend her complaint to add (1) allegations of having received the positive result on the test for Hepatitis A antibodies six months earlier and, (2) a claim that the defendants violated her right to decent living conditions. The court denied this request: the proposed facts were "unnecessary" and her complaint already included a claim about her conditions of confinement.

In May 2012 Elcock filed her seventh motion for recruitment of counsel, but the court reiterated that she had demonstrated that she was competent to litigate her claims, and thus denied her request.

In June 2012 the nurses and remaining state defendants filed separate motions for summary judgment. In support of their argument that they were not deliberately indifferent to a serious medical need, the nurses submitted an affidavit from Dr. Arthur Funk, an internal medicine specialist and the Regional Medical Director for Wexford Health Sources, Inc. (a private company that provides medical care to Illinois prisoners under contract with the Illinois Department of Corrections), who asserted that symptoms of Hepatitis A manifest several weeks after exposure, that there is no specific treatment, and that a positive result on an antibody test occurs when a patient has been previously infected by or vaccinated for Hepatitis A and therefore has developed immunity to it. To support their position that they did not subject Elcock to unconstitutional conditions of confinement, the prison officials included the affidavit of David Delong, a water plant operator at Dwight, who corroborated his testimony that the water at Dwight generally was safe to drink with results from routine water tests performed in May 2009 confirming that the water was "satisfactory."

In February 2013 the court granted summary judgment for both the state defendants and the nurses. The court determined that Elcock's episode of vomiting and stomach pain in May 2009 was not objectively serious and that her symptoms resolved on their own. Nor had Elcock shown that the defendants were deliberately indifferent to her medical needs; she admitted at her deposition that the nurses twice examined her on the day she was vomiting and told her there was no treatment they could offer other

than to suggest she sip water. As for her conditions-of-confinement claim, the court found undisputed the defendants' evidence—primarily Delong's affidavit—that the water was safe to drink.

On appeal Elcock challenges the court's grant of summary judgment for Trancoso, Davidson, and Meredith, and argues that there is a dispute about whether the water at Dwight was unsafe for consumption from May 2 to May 7, 2009, the period when she believes she contracted Hepatitis A. Elcock insists that the defendants withheld results of water tests performed on those dates. But she introduced no evidence to support this charge or contest Delong's testimony that (1) water samples at Dwight are performed monthly, and (2) the samples he studied from May 2009 showed that the water was safe to drink.

Elcock also generally challenges the court's grant of summary judgment for nurses Angeloff and Chicke. To prevail on her claim that the nurses violated the Eighth Amendment, Elcock had to establish that they acted with reckless or malicious intent to deny her medical care for an objectively serious condition. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Earl v. Racine County Jail*, 718 F.3d 689, 692 (7th Cir. 2013); *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010). Even if we assume Elcock's condition was objectively serious, she did not meet her burden. As the district court noted, Elcock admitted that she was examined by nurse Chicke promptly on the morning she became sick and again that day by Angeloff, who explained to Elcock that there was no other treatment they could provide for her symptoms, and Elcock's symptoms resolved without treatment soon after that.

Next Elcock challenges Sergeant Boland's dismissal from the case, and argues that the court overlooked a grievance attached to her complaint in which she accused Boland of denying her medical care after she drank contaminated water. But even if the court overlooked that grievance, Elcock cannot show that she was prejudiced by the oversight because, as the court determined, she did not show that she experienced a sufficiently serious medical condition or dispute the defendants' evidence that the water at Dwight was safe to drink. Elcock also admitted at her deposition that she never spoke to Boland about her illness, and, since he was not personally involved in her medical care, Boland could not be held liable under § 1983. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009).

Elcock also challenges the court's repeated denials of her request for counsel on grounds that she had difficulty understanding complex medical and scientific documents, as well as conducting discovery. But as the court found, her symptoms were not complex, she had previously litigated several lawsuits, staved off summary judgment in this case, actively participated in discovery, and successfully moved  to

compel discovery. The court did not abuse its discretion in concluding that the case's difficulty did not exceed her capacity. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc).

Next Elcock argues that the court's denial of her motion to amend her complaint (to add allegations relating to her testing positive for Hepatitis A) prevented her from strengthening her claim of deliberate indifference. But her claim turned on what facts the defendants knew in 2009 when she complained that the water had made her sick. Elcock had to demonstrate that the defendants knew of and disregarded a serious risk to her health, *see Holloway v. Del. County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008), and test results from 2011 do not bear on that question or show when she contracted the disease. Because the proposed amendments would not have helped Elcock prevail on her claims, the court did not abuse its discretion in denying her motion to amend. *See Adams v. City of Indianapolis*, 742 F.3d 720, 733–34 (7th Cir. 2014); *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008).

Last Elcock argues that the court abused its discretion by failing to appoint an expert to help her understand the water test results and her Hepatitis A test from 2011. A court may appoint experts pursuant to FED. R. EVID. 706(a), and generally experts may testify if scientific or specialized knowledge will help the court to understand the evidence or decide a disputed fact. FED. R. EVID. 702(a); *Ledford v. Sullivan*, 105 F.3d 354, 358–59 (7th Cir. 1997); *Gaviria v. Reynolds*, 476 F.3d 940, 945 (D.C. Cir. 2007). The issues to be decided in this case were whether Elcock had a serious illness and, if so, whether the defendants were deliberately indifferent to it. But expert testimony is not necessary to explain symptoms that can be understood by a layperson, *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004), and whether defendants were deliberately indifferent is a subjective test that would not have benefitted from an expert versed in water testing or her liver condition.

We have reviewed the remainder of Elcock's arguments, and none has merit.

AFFIRMED.