NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 22, 2014[*]
Decided September 23, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-3379

| | |
|---|---|
| LUIS VASQUEZ, et al., *Plaintiffs-Appellants,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:11-cv-00806 |
| DANIEL BRAEMER, et al., *Defendants-Appellees.* | Barbara B. Crabb, *Judge.* |

**O R D E R**

Five Wisconsin prisoners appeal the grant of summary judgment in this suit under 42 U.S.C. § 1983, asserting that defendant officials[1] at the Waupun Correctional

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

[1] The defendants are Daniel Braemer, a supervising officer at Waupun; Don

(continued...)

Institution acted with deliberate indifference to their health and safety by subjecting them to conditions of administrative confinement that deprived them of basic human needs, exacerbated their mental illnesses, and caused them to experience various physical health problems. We affirm.

Administrative confinement is a nonpunitive, involuntary segregated status that is assigned to inmates who are believed incapable of living in the general prison population. At Waupun the warden, taking into account the recommendation from the Segregation Review Team (a panel that makes recommendations about inmate confinement status and includes a security supervisor, a social worker, a member of the Health Services Unit staff, a member of the Psychological Services Unit staff, and the Corrections Program Supervisor) may assign an inmate to administrative confinement, and subsequently place him in segregation to protect staff, other inmates, or the inmate himself from safety risks. While in segregation, inmates stay in their 66-square-foot cell for 23 or 24 hours a day. These cells are equipped with minimal furnishings like a sink and observation window. Each week inmates shower on two occasions, receive two clean changes of clothes, and spend up to four hours of outdoor recreation in open-air cells.

Each of the five prisoners in this lawsuit has a diagnosed mental illness and was confined in administrative confinement at Waupun based on past behavior showing that he was a safety risk to himself, staff, or other inmates. Luis Vasquez and Julian Lopez both suffer from major depression. Vasquez, who has a history of serious mental illness and tried in 2009 to hang himself in his segregation cell using dental floss, was housed in segregation from 2007 to 2011 after he attempted to incite a prison riot and assaulted staff. Lopez, who has a history of violent crimes and assaulting other inmates, was sent to segregation in 2010 after he placed a "hit" on another inmate. David Greenwood and Javier Salazar both suffer from antisocial personality disorder and adjustment disorder (Greenwood also has impulse control disorder and Salazar has obsessive compulsive disorder and depression). Both men were housed in segregation, Greenwood from 2009 to 2011 for assaulting other inmates, and Salazar from 2008 to 2011 for being a leader in the Latin Kings gang and attempting to start a pyramid scheme. Anthony Riach suffers from a myriad of mental illnesses including major

---

[1](...continued)
Strahota, Waupun's current deputy warden; William Pollard, Waupun's current warden; Pamela Zank, the former Corrections Program Supervisor; and Michael Thurmer, Waupun's former warden.

depressive disorder, social phobia, polysubstance abuse, and antisocial personality disorder. He was placed in segregation from 2010 to 2012 for accumulating more than 30 conduct reports, including ones for threatening to kill staff members, and mailing an unknown powder to a county District Attorney's office.

In 2011 the five prisoners jointly sued the defendants for violating their Eighth Amendment rights by housing them for prolonged periods in harsh segregation conditions that exacerbated their mental health issues, causing them to attempt suicide, engage in other acts of self-harm, and develop medical problems such as hypertension and vitamin deficiencies. The district court screened the complaint under 28 U.S.C. § 1915A and allowed them to proceed jointly under Federal Rule of Civil Procedure 20(a) with their claims against the defendants.

The plaintiffs asked the court for assistance of counsel in light of their limited legal knowledge and geographic isolation—they were housed in different prison wings and in different prisons (in June 2012 Vasquez was transferred to the Wisconsin Resource Center to receive mental health treatment). A magistrate judge denied the request, characterizing the plaintiffs' submissions as adequate, adding that the filings were "clearly written" and unaffected by any of their asserted mental health problems. The magistrate judge acknowledged the logistical difficulties involved in a multi-plaintiff suit, with at least one plaintiff housed at a different institution from the others, but pointed out that the plaintiffs' decision to file a joint suit did not change the legal test under *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc).

After the defendants moved for summary judgment, plaintiffs renewed their request for counsel and this time also sought the assistance of a medical expert to testify about the harmful effects of their conditions of confinement on their mental illness.

The district judge granted the defendants' motion for summary judgment. First addressing plaintiffs' request for recruitment of counsel, the judge found that the plaintiffs were "capable advocates" with a "clear grasp" of relevant factual and legal issues, and nothing in their submissions reflected that plaintiffs suffered from mental deficiencies that affected their ability to litigate the case. As for their request for a medical expert, the judge was not persuaded that any such appointment would be appropriate; plaintiffs had not shown that they tried and failed to obtain an expert and, further, an expert would not substantially aid the court in adjudicating the case—particularly with regard to the plaintiffs' burden of establishing the defendants' subjective intent necessary to prove deliberate indifference.

Proceeding to the merits, the judge concluded that the plaintiffs submitted no evidence from which a jury could conclude infer that the conditions of their administrative confinement—a weekly regimen that allowed two showers, two clothing changes, and out-of-cell recreation four times a week—deprived them of the basic needs of sanitation, clothing, and exercise. Nor, the judge added, did three of the plaintiffs—Salazar, Lopez, and Raich—submit sufficient evidence from which a jury could conclude that the conditions of administrative confinement exacerbated their mental health problems or posed any risk of serious harm that would not have existed outside administrative confinement. As for the remaining plaintiffs—Vasquez and Greenwood—the judge found it "closer" whether they submitted sufficient evidence that their mental illnesses were exacerbated significantly by their conditions of confinement; both men had suicidal thoughts and engaged in suicidal behavior while housed in administrative confinement, and their mental-health providers had suggested that both men's depression and behavior related to their prolonged terms and conditions of confinement. But the "broad statements" of these two men's treating physicians went "only so far"; in the judge's view, the plaintiffs' doctors did not specify which particular conditions exacerbated the two men's depression or whether feasible changes could be made to their conditions that would have made a difference to the men's mental health. But even if the plaintiffs' evidence were sufficient to show that the conditions of confinement exacerbated their mental illness and caused them unnecessary suffering, the judge concluded, the plaintiffs did not submit evidence from which a jury could conclude that defendants knew all this and consciously disregarded the risk.

On appeal appellants first argue that the district court abused its discretion in declining to recruit counsel because their case was inherently complex and required testimony from a medical expert. But the court applied the correct standard, *see Pruitt*, 503 F.3d at 654–55, and reasonably found that the plaintiffs—and particularly Vasquez, who had substantial experience litigating cases before the court, including representing himself in three jury trials—had shown themselves to be capable advocates, able to follow court procedures, and respond coherently and logically to legal arguments. *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014); *Romanelli v. Suliene*, 615 F.3d 847, 852–53 (7th Cir. 2010).

Appellants next argue that the district court abused its discretion by denying them a court-appointed expert, whom they needed to help them show how their confinement in segregation exacerbated their mental illness. But courts are not required to appoint expert witnesses and should appoint them only when necessary to

understand complex case facts or complicated, conflicting evidence. *See Gaviria v. Reynolds*, 476 F.3d 940, 945 (D.C. Cir. 2007); *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1070–71 (9th Cir. 1999). Regardless of what an expert might have opined about the plaintiffs' mental health issues, the court properly concluded that an expert would not have helped establish the subjective deliberate-indifference standard. *See Ledford v. Sullivan*, 105 F.3d 354, 359–60 (7th Cir. 1997); *see also Gobert v. Caldwell*, 463 F.3d 339, 348 n.29 (5th Cir. 2006).

Finally the appellants challenge the grant of summary judgment on grounds that their affidavits create a fact question about whether their placement in segregation denied them—inmates suffering from significant mental illness—a minimal civilized measure of life's necessities, and whether defendants acted in disregard of a substantial risk of harm to them. But defendants can be liable only for conditions of which they are subjectively aware, *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099–1100 (11th Cir. 2014), and as the district court explained, there was no evidence that the defendants believed the conditions of confinement inappropriate for inmates suffering serious mental illness or for these plaintiffs in particular. Four of the appellants (Salazar, Raich, Lopez, and Greenwood) did not produce evidence showing that they told defendants that their conditions were exacerbating their mental illness or causing them severe mental distress. *Scarver v. Litscher*, 434 F.3d 972, 975 (7th Cir. 2006) (Scarver "failed to cite evidence to overcome the defendants' denials that they know these conditions were making his mental illness worse."). It is true that Vasquez wrote to the defendants in 2010 requesting more outdoor exercise to "stabilize [his] mental health" (he believed that lack of exercise affected his memory, mood, and overall health), but these letters as the district court observed, do not reflect that the defendants believed that he faced serious harm. Starting in 2008, the defendants gave Vasquez access to a psychiatrist and he began going to group therapy. In 2011 Vasquez wrote supervising officer (Braemer) seeking release from segregation because he was experiencing depression, anxiety, suicidal thoughts, and thoughts of self-harm. Warden Pollard responded by removing Vasquez from segregation in November 2011, after Vasquez's psychiatrist, Dr. Callister, confirmed Vasquez's declining mental health and requested that he be released from segregation.

Finally we agree with the district court that the conditions of confinement identified by the plaintiffs are not unconstitutional. Allowing inmates only two showers and four hours of outside recreation each week does not violate the Eighth Amendment. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744–45 (7th Cir. 2013) (no violation for access to showers that is only weekly); *Henderson v. Lane*, 979 F.2d 466,

468–69 (7th Cir. 1992) (same); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (no violation when indoor exercise allowed); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (no violation for weekly outdoor recreation in prison yard totaling three hours); *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (no violation for weekly outdoor recreation lasting one hour).

AFFIRMED.