NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 30, 2008[*]
Decided October 31, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 07-3989

| | |
|---|---|
| JAMES RUSSELL DAHM, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 05-3275 |
| | |
| ADRIAN FEINERMAN, et al., | Harold A. Baker, |
| *Defendants-Appellees.* | *Judge*. |

# O R D E R

Former Illinois inmate James Dahm filed suit under 42 U.S.C. § 1983, claiming that the defendants, all employees of the Illinois Department of Corrections, were deliberately indifferent to his medical needs. The district court granted summary judgment to the defendants. Dahm now appeals that judgment, and we affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Dahm began serving his prison sentence in August 2003. He entered the Graham Correctional Center with a "medical packet" and a 30-day supply of medications that Dr. Lam, an outside cardiology specialist, had prescribed for coronary artery disease, high blood pressure, and allergies. Dr. Feinerman, a prison physician licensed since 1977, examined Dahm the day he entered Graham and immediately admitted him to the infirmary for acute-care observation. Feinerman also ordered tests and physical therapy, and prescribed seven different medications, some of them different from Dr. Lam's prescriptions.

Two months later Dahm was transferred to the Centralia Correctional Center, where Dr. Kayira and Dr. Santos provided him with medical care. Between November 2003 and December 2004, the Centralia medical staff examined him approximately 34 times and, on three separate occasions, allowed Dahm to visit Dr. Lam. The consultation reports offered by Dr. Lam were used by Dr. Kayira and Dr. Santos in formulating a course of treatment, which included the discontinuation of certain drugs, cardiac catheterization, EKGs, and stress tests. In June 2004 Dr. Santos diagnosed Dahm, who had recently awoken with a swollen right knee, with synovitis of the lower right extremity and prescribed an anti-inflammatory drug. Dahm did not mention his knee pain again until December, at which point he complained of a knot on the back of his knee. When a nurse referred Dahm to Dr. Santos, he at first refused to be examined and later refused to take his medications.

In December 2004 Dahm was again transferred, this time to Jacksonville Correctional Center. Dr. Lochard, the primary physician at Jacksonville, first saw Dahm on January 3, 2005, when he prescribed nine different medications. Between January 2005 and Dahm's release from prison in February 2006, Dr. Lochard ordered an EKG and a lipid profile, encouraged Dahm to quit smoking, scheduled a cardiac catheterization, ordered x-rays, and consulted with Dr. Lam on several occasions. In June 2005 Dr. Lochard diagnosed Dahm with a Baker's Cyst as the result of the injury to his knee and provided him with Tylenol and a neoprene brace. In October 2005, four months before his release, Dahm was again examined by Dr. Lam, who concluded that he was doing well from a cardiac standpoint.

Barely a month after Dr. Lam issued that report, Dahm filed this suit claiming that his four prison doctors and five other administrators had violated the Eighth Amendment by denying him necessary medical care for his knee and heart conditions. After more than a year of discovery, the defendants moved for summary judgment, which the district court granted in November 2007. The court concluded that Dahm had presented no evidence regarding the severity of his knee injury or the defendants' alleged indifference to his knee pain. And the court reasoned that, although Dahm's heart condition constituted a serious medical need, a jury could not reasonably find that the defendants had been indifferent to that condition simply because they did not prescribe the same drug regimen as his personal

physician.  We review the grant of summary judgment de novo, construing all facts and drawing all inferences from those facts in Dahm's favor.  *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006).

Prison officials violate the Eighth Amendment's prohibition on cruel and unusual punishment if they respond with deliberate indifference to a prisoner's serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir. 2008).  An inference of deliberate indifference may arise where prison officials refuse to follow an outside specialist's orders or recommendations.  *Gil v. Reed*, 381 F.3d 649, 663-64 (7th Cir. 2004).  Yet "dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to sustain a claim of deliberate indifference.  *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *see Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008).

The district court properly granted summary judgment to the defendants.  As the court recognized, Dahm presented no evidence suggesting that the defendants were deliberately indifferent to his heart and knee conditions.  During his incarceration, Dahm received blood work, stress tests, EKGs, multiple cardiac catheterizations, x-rays on his knee, nonprescription pain medication, and nine types of prescription medication.  Dahm was also permitted to visit with his own outside specialist, Dr. Lam, on several occasions.  Although the defendants' did not follow every prescription recommendation made by Dr. Lam, Dahm cannot show that the decisions made by the prison physicians in selecting different, but appropriate, medications fell outside the bounds of accepted medical practice.  *See, e.g.*, *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field.").  Even Dr. Lam agreed that Dahm was being cared for adequately.

Accordingly, the judgment of the district court is AFFIRMED.