PER Curiam.
Tyrone Petties, an Illinois prisoner, claims in this suit under 42 U.S.C. § 1983 that successive medical directors at State-ville Correctional Center violated the Eighth Amendment by failing to provide adequate medical care for his torn Achilles tendon. Petties appeals the district court’s grant of summary judgment for the doctors. We conclude that, on this record, a jury could not reasonably find that the doctors’ treatment of Petties’s ankle rose to the level of a constitutional violation, and we affirm.
Background
In January 2012 Petties was climbing stairs when he felt a sudden “pop” and extreme pain in his left ankle. He went immediately to the prison infirmary, where the examining physician noted tenderness and abnormal reflex in the left Achilles tendon and observed that Petties could not bear weight on that ankle. The physician, who is not a defendant in this suit, prescribed Vicodin and crutches. He also authorized a week of “meals lay-in” so that Petties could eat in his cell rather than walk to the cafeteria.
That same day the prison’s medical director, Dr. Imhotep Carter, noted in the medical file that Petties in fact had suffered an “Achilles tendon rupture.” Dr. Carter, an employee of Wexford Health Sources (and one of the defendant physicians) modified his colleague’s treatment *690 instructions by directing that Petties be scheduled for an MRI and examination by an orthopedist. He characterized these additional steps as “urgent.”
Prison lockdowns during the following week resulted in cancelation of three appointments at the infirmary. By the time Petties was next seen, eight days had passed since his injury, and apparently he thought he could bear weight on his left foot. That was the understanding of the examining physician, who noted in the medical file that Petties “believes he can bear weight.” Petties insists that, at the time, he was experiencing severe pain when he put weight on his left foot, but he does not dispute that the examining physician read the situation differently.
During the weeks after his injury, Pet-ties continued to feel pain even when he used the crutches. He next was seen in the infirmary in February 2012, three-and-a-half weeks after his injury. Petties complained to an infirmary worker that his Achilles tendon was “killing” him and keeping him from climbing stairs because of the pain. The next day, on February 14, 2012, Dr. Carter examined him and noted that the Achilles tendon was shortened and swollen. He extended the prescription for Vicodin for six weeks, directed Petties to continue using crutches, reauthorized him to have a low bunk and “medical lay in” for two months, and told him to avoid stairs and the gym.
On March 6, 2012, Petties was taken offsite for the MRI ordered by Dr. Carter. That diagnostic confirmed a “complete Achilles tendon rupture.” The next week Petties again was taken offsite for examination by Dr. Anuj Puppala, an orthopedist. He opined that the absence of “any sort of cast” to immobilize Petties’s torn Achilles tendon was “contributing to his pain and likely contributing” to the 2 cm gap in the ruptured tendon. Dr. Puppala gave Petties an orthopedic boot that would function like a cast to immobilize his ankle. The doctor also recommended continued use of crutches and referred Petties to a foot and ankle specialist. A doctor at Stateville promptly approved use of the orthopedic boot for three months, and another infirmary physician increased the strength of the Vicodin dose prescribed for Petties.
Petties continued to be seen at the infirmary until his appointment with the foot and ankle specialist. A note in his medical file from April 4, 2012, says that Petties was wearing the boot but waiting on special support shoes. On April 10 he was wearing the boot and walking with a cane. In May a doctor renewed his allowance for a low bunk, crutches, and orthopedic boot until August. The prison’s medical staff also repeatedly renewed the Vicodin prescription — at the end of April, in May, and in June. Petties’s permit for one crutch and the orthopedic boot was extended until December of that year.
Petties was examined by the foot and ankle specialist, Dr. Samuel Chmell, in July 2012. Dr. Chmell apparently had treated Petties before in 2010 when he ruptured the Achilles tendon in his right ankle. Dr. Chmell did not observe evidence of “tenderness with range of motion” but did see signs of decreased ankle strength. He recommended that Petties continue limiting his physical activity, undergo a second MRI to assess the progress of his healing, and receive physical therapy at least twice per week. In August 2012 another Wexford employee, Dr. Saleh Obaisi, replaced Dr. Carter as medical director at Stateville. Dr. Obaisi (the second of the defendant physicians) already had been working weekends at the prison, and had approved the MRI recommended by Dr. Chmell. That second MRI was performed in September 2012, and showed a partial Achilles tear.
*691 A few weeks after Dr. Obaisi’s promotion to medical director, he examined Petties. His notes from his August examination indicate that Petties had not been using his crutches and wanted to return them. During that examination Dr. Obaisi told Petties that physical therapy would not be ordered. The next month Petties was using one crutch when he was seen by a nurse at the infirmary. Near the end of September 2012, Dr. Obaisi noted that Petties had “not seen ortho yet” and prescribed Tylenol.
Petties next saw Dr. Obaisi in November 2012, about 10 months after his injury. The doctor observed that Petties still was experiencing pain and authorized continued assignment to a low bunk, soft-soled gym shoes, and another year’s use of the orthopedic boot. From December 2012 to April 2013, other medical staff also tended to Petties on five occasions. On April 16, 2013, Petties visited the infirmary; he complained that he was not getting pain medication or the shoes ordered by Dr. Obaisi, but the practitioner who saw him noted that he had received pain medication and shoes from Dr. Obaisi the previous October. In June 2013 he was given additional pain medication. In his declaration submitted at summary judgment, Petties says that as of early 2014 he still was experiencing “serious pain, soreness, and stiffness” in his left ankle.
Petties filed this suit in November 2012, initially against Wexford as well as Drs. Carter and Obaisi. The district court recruited a lawyer, who later amended the complaint to drop Wexford and allege that only the two doctors were deliberately indifferent to Petties’s torn Achilles tendon. Petties principally argued that Dr. Carter was deliberately indifferent to his torn Achilles tendon by failing to immobilize his ankle with a boot or cast immediately after the injury, and Dr. Obaisi acted with deliberate indifference to the injury when he did not order physical therapy despite Dr. Chmell’s recommendation.
The district court granted the doctors’ motion for summary judgment. Dr. Carter’s decision to wait eight weeks before immobilizing Petties’s ankle in a cast or boot could not have constituted deliberate indifference, the court reasoned, because Petties’s several physicians in and out of prison held different opinions about whether a boot or cast had been necessary. The court further concluded that a jury could not reasonably find that Dr. Obaisi’s rejection of the recommendation for physical therapy had constituted deliberate indifference because, according to the judge, Pet-ties had learned physical therapy exercises a year earlier (when he ruptured his right Achilles tendon) and could have performed those same exercises on his own.
Analysis
On appeal Petties first argues that the district court wrongly attributed to a difference of medical opinion Dr. Carter’s choice not to immediately immobilize his ankle despite Wexford’s treatment protocol. Petties says that the delay between his injury and when his ankle was immobilized left him in “constant, severe pain” and worsened the tendon rupture. Prolonged and unnecessary pain resulting from a significant delay in effective medical treatment may support a claim of deliberate indifference. Berry v. Peterman, 604 F.3d 435, 441 (7th Cir.2010); Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir.2008); Edwards v. Snyder, 478 F.3d 827, 832 (7th Cir.2007). But disagreement with a doctor’s medical judgment is not enough to prove deliberate indifference. Berry, 604 F.3d at 441; Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir.2006); Norfleet v. Webster, 439 F.3d 392, 397 (7th Cir.2006). Even admitted medical malpractice is not sufficient to show that a *692 doctor acted with deliberate indifference. McGee v. Adams, 721 F.3d 474, 481 (7th Cir.2013); Norfleet, 439 F.3d at 397. Rather, the inmate must show that the doctor’s treatment strayed so far from accepted professional standards that a jury could infer the doctor acted with deliberate indifference. See McGee, 721 F.3d at 481; Roe v. Elyea, 631 F.3d 843, 857 (7th Cir.2011); Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir.2008).
We agree with the district court that, on this record, a jury could not reasonably conclude that Dr. Carter was deliberately indifferent by waiting to give Petties a splint or boot. Immediately after Petties’s injury, a prison doctor exempted him from walking to meals and prescribed pain medication, an anti-inflammatory, and crutches. The walking exemption and prescriptions were renewed repeatedly. And that same day, Dr. Carter—who had treated about 10 ruptured Achilles tendons previously—ordered an urgent referral for an MRI and an appointment with an orthopedist. Although Dr. Carter acknowledged that treatment for a complete Achilles tear typically includes immobilizing the ankle to minimize putting weight on the ankle, he also explained that he did not employ a splint initially because he believed that giving Petties crutches and minimizing his time on his feet was an effective treatment plan. Additionally, Dr. Puppala, the orthopedist who examined Petties after his MRI in March 20Í2, testified that although he would almost always immobilize a patient’s ankle in a cast or boot, a torn Achilles tendon “would probably heal” without one. This meaningful and ongoing treatment of Petties’s injury at Stateville and with outside medical providers—which Dr. Carter oversaw—could not constitute deliberate indifference.
Petties next argues that Dr. Obaisi was deliberately indifferent when he declined to order physical therapy despite the ankle specialist’s recommendation in July 2012 for weekly physical therapy. Doctors are entitled to deference in treatment decisions unless no minimally competent professional would have acted similarly. See McGee, 721 F.3d at 481; King v. Kramer, 680 F.3d 1013, 1018-19 (7th Cir.2012); Roe, 631 F.3d at 857. And although not following the advice of a specialist may constitute deliberate indifference, see Gil v. Reed, 381 F.3d 649, 663-64 (7th Cir.2004); Jones v. Simek, 193 F.3d 485, 490 (7th Cir.1999), whether a doctor is deliberately indifferent depends on the totality of the inmate’s care, see Walker v. Peters, 233 F.3d 494, 501 (7th Cir.2000); Dunigan ex rel. Nyman v. Winnebago County, 165 F.3d 587, 591 (7th Cir.1999); Gutierrez v. Peters, 111 F.3d 1364, 1375 (7th Cir.1997). Petties was treated immediately and continuously after he tore his Achilles tendon. He received crutches, regular pain medication, and later a boot to immobilize his left ankle, and was permitted to minimize time on his feet by eating his meals in his cell and not attending yard and gym time. Doctors at the prison (including Dr. Obaisi) repeatedly renewed those treatments after Dr. Obaisi took over as medical director. And Dr. Chmell, the specialist who had recommended physical therapy, testified that when he examined Petties in July 2012, the ankle had diminished strength but a full range of motion, and the tendon was partially healed, even without receiving any physical therapy before then. Petties’s evidence does not show that Dr. Obaisi’s treatment was so contrary to accepted professional standards that a jury could infer that it was not based on medical judgment. See Duckworth, 532 F.3d at 680; Norfleet, 439 F.3d at 396.
Accordingly, the judgment of the district court is AFFIRMED.