**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 7, 2020[*]
Decided January 27, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 18-3627

| | |
|---|---|
| ROBERT L. COLLINS BEY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 13-cv-618-jdp |
| TIMOTHY HAINES, et al., | |
| *Defendants-Appellees.* | James D. Peterson, |
| | *Chief Judge*. |

**O R D E R**

Invoking 42 U.S.C. § 1983, Robert Collins Bey, a Wisconsin prisoner, seeks damages from two prison dentists for violating the Eighth Amendment by unduly delaying his dental care. He also seeks an injunction to compel prison officials to hire a full-time dentist to reduce wait times. The district court reasoned that although systemic problems, such as understaffing and long patient waitlists, may have

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

complicated the dentists' work, the defendant dentists were not at fault for these problems, nor were they deliberately indifferent to Collins Bey's dental needs. The court also held that because the prison has now hired a full-time dentist, Collins Bey's request for an injunction request is moot. We affirm.

**I**

While at the Wisconsin Secure Program Facility, Collins Bey needed dental care. He received partial dentures (for chewing and sore and bleeding gums), fillings, treatment for an abscess, and tooth restorations and extractions. He obtained his partial dentures in 1992. When they broke 15 years later in 2007, he wanted replacements immediately. A dentist decided that this did not qualify as an "urgent" request, and so Collins Bey was put on the "routine" waitlist. Two months later, Collins Bey renewed his request for partial dentures and added a complaint about a broken filling. The prison's new dentist, James Wommack, saw him, took X-rays of his teeth, and replaced the filling. Like the earlier dentist, Dr. Wommack concluded that Collins Bey did not have an immediate need for new partial dentures—first, some of his teeth had to be restored to anchor the dentures. He therefore put Collins Bey on the "essential" waitlist to restore some teeth. This is a higher priority than "routine," but lower than "urgent."

Collins Bey began receiving restorative treatment 11 months later, when Dr. Wommack saw him in June 2008. The lapse of time occurred because Dr. Wommack visited the prison only once a week, yet he was supposed to serve all the inmates. He advised Collins Bey: "I am only here 4 days/month so the list is very long. I will try to get to you in ASAP." At the June 2008 visit, after examining an X-ray Dr. Wommack filled cavities in two teeth, noted that other teeth were decayed, and two months later, restored another two teeth. The following year, in 2009, Collins Bey complained of severe pain in his teeth. A different part-time dentist, James Thorpe, saw Collins Bey a month later at the next available appointment. Dr. Thorpe refilled a cavity but did not extract a broken tooth. He reasoned that, although that tooth was broken down to the gum line, it would not cause pain because it had no nerve.

With the limited staffing, Collins Bey's next dental treatment did not occur until two years later, when in 2011 he moved to another prison. He complained about the still-absent partial dentures, sore and bleeding gums, the broken tooth, and a tooth with an abscess. This time he was put on the "essential" list. Dr. Thorpe saw Collins Bey at the new prison the next month. He extracted the abscessed tooth but did nothing else because the abscess was Collins Bey's chief complaint and other patients had greater

needs. After Collins Bey filed another request to have the broken tooth extracted, a new dentist extracted it two weeks later. This dentist confirmed that Collins Bey still needed more restorative work before he could receive partial dentures. A few days later, he filled cavities in two more teeth. The next month, Collins Bey complained that parts of the extracted tooth remained in his gums. A few days later, Dr. Thorpe removed loose bone, extracted a root fragment, and smoothed sharp edges of the remaining bone.

The glacial pace of his treatment prompted Collins Bey to bring this suit, but he encountered three problems. He first clashed with his attorneys, whom the district court had recruited upon his request. After helping Collins Bey amend his complaint, they asked to withdraw, citing "highly inappropriate, sexually-explicit advances" from Collins Bey. He admitted that he had proposed a "personal relationship" with them but promised to stop now that he knew they were not interested. The court granted their motion. It ruled that it was "beyond any reasonable dispute" that he had solicited an improper "sexual and romantic relationship" and "impair[ed] [the attorneys'] ability to effectively represent him." Finding that Collins Bey had "abused the privilege provided to him," the court also refused to recruit new counsel unless he had "immediate need of dental care that prison officials refuse to provide." But by 2015, Collins Bey—now back at his original prison—had finally received his new partial dentures and other dental treatment.

The second problem concerned discovery. One defendant (Mary Miller, the Health Services Unit manager) swore that she could not provide testimony because of illness. She later filed substantive testimony, which Collins Bey moved to strike and for which he sought sanctions, because (he said) she had not proven that she now was well. She filed another declaration, which explained that her health had improved. The district court accepted Miller's assertions and denied sanctions.

Third, later in the case, Collins Bey asked for another lawyer or an expert witness. Citing Federal Rule of Evidence 706, he argued that "[his] case will involve issues of medical expertise for which counsel or an expert will be necessary" to "assist the district court." The court ruled that because Collins Bey had harassed prior counsel, it would not recruit new counsel or an expert unless he needed dental care urgently, which was not the case given his new partial dentures and other dental treatment. The court recognized that this meant "that his medical malpractice claims will fail."

Treating the case as raising damages and injunction claims, the court entered summary judgment for the defendants. It rejected Collins Bey's claims that Drs. Wommack and Thorpe had violated his rights under the Eighth Amendment and state

law and thus owed him damages based on his long waits for dental care. The court explained that any delays resulted from staffing decisions, not a faulty "cavalier" attitude by either dentist. It added that the dentists "used their medical judgment to prioritize which patients to treat first." The court then assessed Collins Bey's request to enjoin his prison to hire a full-time dentist to reduce wait times. It observed that in 2018 the prison hired a full-time and a part-time dentist; "routine" visits now take under 30 weeks and "essential" visits take no more than eight weeks. This information convinced the court that the request for injunctive relief was moot.

## II

### A

Collins Bey contests the rulings allowing recruited counsel to withdraw; denying his motion for an expert; and denying his motion to strike Miller's testimony and for sanctions. We review each of these decisions for abuse of discretion. See *Fidelity Nat. Title Ins. Co. v. Intercounty Nat.*, 310 F.3d 537, 541 (7th Cir. 2002) (motion to withdraw); *Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997) (motion for expert witness); *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 647 (7th Cir. 2014) (motion to strike testimony); *In re Thomas Consolidated Industries, Inc.*, 436 F.3d 719, 724 (7th Cir. 2006) (sanctions).

On the ruling allowing counsel to withdraw, we apply the Wisconsin Supreme Court's Rules of Professional Conduct for Attorneys. "[M]ost federal courts use the ethical rules of the states in which they sit," *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017) (citation and quotation marks omitted), and the Western District of Wisconsin is no exception. See, *e.g.*, *Tucker v. George*, 569 F. Supp. 2d 834, 837 (W.D. Wis. 2008). Under these rules, a court may allow counsel to withdraw if "good cause for withdrawal exists." Wisc. Sup. Ct. R. 20:1.16. Collins Bey admitted to making "personal advances." He contends that he did not know that his lawyers would reject these advances, but that defense is irrelevant. Once he made the conceded advances, the district court was entitled to find that counsel had good cause to believe it would be "unreasonably difficult" to continue representation.

Second, although Collins Bey is correct that the district court provided no reason for refusing to appoint an expert witness for him (beyond stating that he had harassed his prior *counsel*), we see no reversible error. Collins Bey is correct to note that his past harassment of the lawyers does not explain why the court refused to appoint an expert, who would play a different role. Indeed, the court's rationale conflicts with its earlier

statement that Collins Bey needed expert testimony for his malpractice claim. See *Spann v. Roper*, 453 F.3d 1007, 1009 (8th Cir. 2006). Other circuits have held that when a party requests the appointment of a neutral expert under Federal Rule of Evidence 706, a court must provide a "reasoned explanation" for its ultimate decision. *Gaviria v. Reynolds*, 476 F.3d 940, 945 (D.C. Cir. 2007); *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003); *Steele v. Shah*, 87 F.3d 1266, 1270–71 (11th Cir. 1996). But here, any defect in the court's reasoning was harmless. It was unclear whether Collins Bey was asking for a *neutral* expert under Rule 706, or a partisan expert to assist *him* in defeating the defendants' motion for summary judgment. On appeal, he says that he sought the latter. Yet we know of no authority, and Collins Bey has not directed us to anything, stating that Rule 706 empowers a district court to appoint a partisan expert at public expense. The district court thus did not unreasonably deny the request that Collins Bey now says he made.

Finally, the district court properly denied Collins Bey's motions to strike Miller's testimony and for sanctions. Collins Bey contends that the district court should not have accepted Miller's declaration that her health had improved. But the court reasonably accepted Miller's assertions about her health because those assertions did not contradict her prior declaration or any other evidence. See *Zuppardi*, 770 F.3d at 647 (motion to strike denied where defendant's later statements did not contradict prior ones).

**B**

On the merits, Collins Bey raises two Eighth Amendment claims: first, he wants damages from Dr. Wommack for not giving him new partial dentures in 2007; and second, he seeks damages from Dr. Thorpe for not extracting his broken tooth in 2009. We review *de novo* the entry of summary judgment, viewing the record in the light most favorable to Collins Bey. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

Deliberate indifference to a prisoner's serious medical needs may violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To survive summary judgment on this claim, Collins Bey needed to submit evidence of an objectively serious medical need to which a defendant was deliberately indifferent. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). We review the full record of Collins Bey's treatment— his X-rays, fillings, restorations, extractions, bone-fragment removals, and repairs— when assessing the two decisions he challenges. See *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999).

No evidence suggests that Dr. Wommack's decision in 2007 not to replace the partial dentures immediately reflected deliberate indifference. According to Dr. Wommack's unrebutted professional judgment, in 2007 replacing the partial dentures was not an urgent medical need. Rather, restoring Collins Bey's teeth was the priority because (as another dentist confirmed) he first required restorative treatment to anchor new partial dentures. No evidence indicates that Dr. Wommack believed that delaying replacement of the partial dentures until Collins Bey's teeth were restored would cause unnecessary pain. See *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015). And no evidence suggests that Dr. Wommack believed that without new partial dentures, Collins Bey lacked enough teeth to function. See *Duckworth*, 532 F.3d at 679. Thus, Dr. Wommack permissibly used his professional judgment in 2007 to prioritize restoring Collins Bey's teeth. See *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008).

Collins Bey responds that Dr. Wommack nonetheless waited 11 months to start the restoration process that ultimately stretched over seven years. This, Collins Bey, is explainable only by deliberate indifference. But Collins Bey is overlooking other critical facts. During the two years that Dr. Wommack saw Collins Bey, he was the prison's only dentist, whom the prison retained just one day per week to treat the inmates. He used his professional judgment to treat each inmate based on the severity of their needs. No evidence suggests that Dr. Wommack preferred inmates with minor dental issues over Collins Bey. Rather, with his limited time, he permissibly used his judgment to treat Collins Bey's most urgent needs first—by inserting a filling in 2007, and then in 2008, by restoring four of his teeth on two separate visits. See *Jackson*, 541 F.3d at 698.

Similarly, Dr. Thorpe's decision to decline extracting the broken tooth in 2009 does not reflect deliberate indifference to Collins Bey's dental needs. When he first saw Collins Bey in 2009, he filled a cavity in another tooth and reasonably decided not to extract the broken tooth because, it is undisputed, that tooth had no nerve and could not cause pain. When Dr. Thorpe saw Collins Bey in 2011, he reasonably removed the tooth with an abscess but again did not remove the broken tooth, because the abscess posed the imminent need, while the broken tooth with the dead nerve did not. Further, like Dr. Wommack, Dr. Thorpe had limited time to attend to all his patients. He too was entitled to use his professional judgment to prioritize Collins Bey's urgent dental needs, see *Jackson*, 836 F.3d at 698, and to meet the pressing needs of all other patients.

Finally, Collins Bey challenges the dismissal of his injunction claim as moot. "[A] court's power to grant injunctive relief only survives if such relief is actually needed." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009), *abrogated on other grounds by Jones v.*

*Carter*, 915 F.3d 1147, 1149–50 (7th Cir. 2019). Collins Bey sued to force his current prison to keep a full-time dentist on staff to reduce long wait times. It is undisputed that the Department of Corrections has hired a full-time *and* a part-time dentist for his prison. "Routine" visits now occur in about a half-year and "essential" visits (which apply to the restorative treatment that caused Collins Bey's long wait times) take place in under two months. Collins Bey's request for injunctive relief is therefore moot.

AFFIRMED